The next case this morning is 519-0372, People v. McGauley. Arguing for the defendant is Carolyn Clarkquist. Arguing for the state is Trent Marshall. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Counsel for the appellant, please state your name and you may proceed. Good morning, Your Honors. Counsel for the state, my name is Carolyn Clarkquist and I'm here on behalf of the appellant, Stephen McGauley. This court should grant Mr. McGauley a new trial because the trial court committed two reversible errors that violated McGauley's constitutional right to a fair trial by an impartial jury. First, McGauley was prejudiced when the trial court denied his motion to sever the first-degree murder and Class A misdemeanor battery charges, which allowed the jury to then hear damaging propensity evidence that would not be otherwise admissible as to the first-degree murder charge alone. It compounded the error when it failed to properly instruct the jury at the close of evidence about the proper limited use of the propensity evidence. Second, the trial court also denied Mr. McGauley a fair trial when it jury saw the state's star witness fall off the witness stand, injure his head and be taken away in a stretcher. Turning to the first issue, severance. Severance should be granted in separate trials of order if it appears the defendant is prejudiced by joinder of separate charges. That's exactly what happened in this case. Mr. McGauley was charged with first-degree murder of his friend, Stephen Flack, and also a separate Class A misdemeanor battery of his wife. Prior to trial, counsel filed a severance motion and he argued correctly so that as a consequence of joining the charges, the state was then allowed by virtue of the domestic battery charge to present prior evidence of domestic violence. Now, the reason that's prejudicial and should not have been admitted because had the case has been severed, the jury would have only heard the no disadvantage had the trial court granted the severance motion, allowed that jury to hear the evidence with regard to the first-degree murder, and then separately hear the prior incidents of domestic violence in a separate bench trial for the Class A misdemeanor. The parties even could have stipulated to that evidence. But regardless, it's long-standing in our common law that propensity evidence can be particularly damaging to a defendant because the jury may be more likely to convict him because he thinks he's a bad person to, excuse me, deserving of punishment. In this case, that's exactly what happened. The state knew ahead of time that Mr. McGauley was going to raise self-defense. That put his credibility into question because he would have to testify to his self-defense claim. In this case, when Mrs. McGauley testified about the prior incidents of domestic violence, the jury did receive a limited instruction telling it properly so that that evidence could only be heard with regard to the domestic battery charge. Great. Everything's, that's fine. However, during closing argument, the state told the jury that, and this was after there was an objection from defense counsel when the state started to make this argument, it told the jury that you're going to get a jury instruction. It's going to say that the evidence of the other domestics have been received on the issue of defendant's propensity. They can be considered by you. They show the defendant acts that way. Then next, we have the jury instructed. They do not get the limiting instruction. They are not told that propensity evidence can only be considered to the separate domestic battery charge. Instead, what they do get is an instruction saying that the evidence has been received, that the defendant has been involved in offense other than those charged. I would ask the court to take note of that. Those charged, that is a plural. He's been charged with two criminal offenses that are before the jury. Then the fact that the jury was confused by all of this is clear from the jury note that it sent out. During its deliberations, they asked specifically about the prior incidents of domestic violence saying, do we combine the previous incidents alluded to as part of the charge or were the previous incidents just used as an example of previous behavior and not part of the current domestic battery charge? The judge actually circles that latter part to be used as examples of previous behavior, not part of the domestic battery charge. Well, that kind of back to the state's closing argument, defendant acts that way. Here, examples of previous behavior, that's what the jury is asking about. This would have been the perfect opportunity for the trial judge to say, hold on, we got to make sure the jury is properly instructed. It could have given the eliminating instruction at this juncture, and it should have. It absolutely should have. We raised a separate argument that counsel was ineffective for not asking that. In both instances, prejudice has occurred through the trial court and through trial counsel. And the reason for that is because we do not know that the jury convicted Mr. McCauley based on the applicable law to each separate charge. Our court, excuse me, the second district appellate court, their 2013 decision in Johnson is right on point. The same two errors that occurred in this case occurred in Johnson. And the courts in that case held, as this court should do here, that there, there was an erroneous jury instruction, such as there is in this case, that being that the modified 3.14, the jury was given, was not accurate, did not limit its use of the domestic violence prior incidents. And there, we don't know that as a consequence of the improper joinder and the faulty jury instruction, this has caused a serious risk that Mr. McCauley could have been incorrectly convicted because the jury did not understand the applicable law. The confluence of errors here are the same that happened in Johnson. And actually, much worse to the extent that here we had a defense counsel pleading, if you go back and look at the hearing from the severance motion, he's very clear. He's saying, this is a way that providing a backdoor method by which the state can try and subvert the purpose of evidence rule 404B, which is the prohibition of other crimes evidence. As I mentioned, the state was at no disadvantage to have these cases severed. He was at a disadvantage by having him join Mr. McCauley because he's going to testify. And by that point, the jury has already heard his wife testify to the prior incidents of domestic violence, none of which would have been admissible to the first remurder charge alone. So for those reasons, because there was an affirmative misstatement of the law when the jury was fully instructed, not given the limiting instruction that the prior incidents of propensity evidence can only be used with regard to the misdemeanor domestic battery charge, this is reversible error. McCauley has been denied a fair trial by the trial court also aired when it failed to grant a mistrial. The issue here was the state's only witness to the shooting of Mr. Flack was during cross-examination is getting impeached. He testifies on direct that no aggression from the victim in the case. Keep in mind that Mr. McCauley has raised self-defense. And then during cross-examination, which by all accounts was very vigorous, that was never disputed on the record below. He's getting impeached with his initial statements to the police during which he told the police that it was actually Mr. Flack who beat Mr. McCauley initially. And we know that he was had injury McCauley because there were photographs introduced at trial that show that he had injury to his face. So here we go. He's now being challenged and impeached with those statements on cross-examination. And then what happens is he has what's called a violent seizure. He collapses, strikes his head on the desk, then the concrete floor adjacent to the jury box and full sight of the jurors. He gasps, sees twitch, gurgled and spasm for several minutes before the jury's removed. And then he's taken out on a stretcher. He comes back almost a week later, after which, you know, counsel had moved for a mid-trial saying, Judge, please, at least at a minimum, and the state did agree to this, although they don't now on appeal, but they had asked, you know, at least for some curative instruction. Counsel also asked that the jury be questioned. The trial court just outright dismissed it, said, well, they're not prejudiced. And the question here that this court, and any, I mean, how can we answer that? The judge didn't do his duty and at least ask the jury, query them. Did this, we have to keep in mind the jury is citizens from Madison County. You know, it might be routine for the trial judge to see this sort of traumatic event, but certainly not for these jurors, especially where they then see this witness. Keep in mind the only witness for the state to testify that McCauley shot the victim. Can you get the jury out of the room quickly? You can get the jury out of the room quickly, but the concern here is that, and I cited a lot of cases in my brief where the motion for mistrial denial was upheld, but the reason for that, and you can look at each one, there was some questioning of the jurors about the incident and issue. No such question was here. It's just trial court's subjective determination that there is no sympathy. And then, you know, we have there and it's an abuse of discretion standard, isn't it? That's right. It is. And we think that the lack of using any discretion, which is what the judge here is an abuse of discretion. He's relying on his subjective opinion about the jury's impressions. And the least he could have done has given them IPI 101, just reminding them, neither sympathy or prejudice should influence you, but instead he doesn't. And then the first thing they hear when Kibbens resumes testifying a week later is that I'm here against doctor's orders. And then in closing argument, they hear the state refer to defense counsel, making Kibbens look like a fool, comma liars, there's a little ridicule there. So, you know, Mr. McCauley, again, he's entitled to an impartial jury. That did not happen here for the two reasons that I put forth today. And I see I'm out of time. Does the court have any questions? Questions, Justice Vaughn? No questions. Justice Welch? No questions. Thank you. You'll have an opportunity for rebuttal. Counsel for Applee, please state your name and you may proceed. Thank you, Your Honor. Trent Marshall for the state. May it please the court, Ms. Clarkquist, with respect to the motion to sever state's position that the trial court did not abuse its discretion in determining that the domestic battery, which immediately proceeded and prompted the events that led to the murder, was part of the same comprehensive transaction for purposes of section 111-4A, and that even assuming otherwise, the failure to sever was harmless. With respect to the fact that the jury was not twice given a limiting instruction with respect to the state's 115-7.4 evidence, the state would emphasize that when the evidence of the two prior domestics was admitted, the jury was contemporaneously instructed that the prior acts were only relevant to the domestic violence charge. And the jury's note later showed that it appropriately limited consideration of the prior acts to that charge. Under the circumstances, the defendant is unable to establish error or a plain error. At this point, I would offer this cite, People v. Hudson, 2023, ILAP 1st, 192519, paragraph 57. And it's one of several cases that I think cites People v. White, a Supreme Court decision, for the general proposition that if a defendant is unable to demonstrate first-pronged plain error, he is unable to demonstrate prejudice for the purposes of Strickland. As defense counsel correctly notes in her reply brief at 11 and 12, pages 11 and 12, I neglected to include a statement of that effect in my brief, and I apologize for the oversight. As for the motion for the mistrial, the trial court allowed counsel to make his record as to what counsel claimed happened. Trial court simply disagreed with counsel's representation of what occurred. Delving further into it, questioning the jurors about something that the trial court determined it had not seen might have drawn undue attention to it and caused further problems. Given that it is an abuse of discretion standard, and the court was in a superior position to make these determinations as to what occurred and as to its potential effect, this court should find no abuse of discretion. Now, I would lastly like to address the notion that the evidence was closely balanced. It just didn't come down to Kibben's testimony versus the defendant's. Leah, the victim's wife, she was the only one that was sober, I think, and she corroborated Kibben's testimony in several respects. There was a defense witness, and I apologize again, I should have developed this further in my opening brief, but there was a defense witness named Jamie Sauter, and as the defendant notes in the brief at page seven, she testified that there was continuous yelling and cussing prior to hearing five quick gunshots. The state explored this. The state went into this during the trial. That's kind of an incomplete and inaccurate summary. She had told a detective Kolker, I believe, a few days after the incident, and her prior statement was admissible pursuant to 115-10.1, and the state clarified during its cross-examination and its recross that what she actually saw and heard was she heard a lot of yelling and screaming. She walked down. She saw Leah at the car. Then she saw the victim walk out. He didn't appear agitated. He was smoking a cigarette, came out to talk to Leah. Ms. Sauter started walking as the victim started walking back towards the house. Then she said it was approximately 70 feet, I think, in 20 seconds, she heard complete silence, and then she heard gunshots. What that effectively established was, it corroborates Kibben's account of what he said happened. Basically, the defendant just in its closing, Sauter's testimony demonstrated that the events that Finnett described did not happen and could not have happened in such a short timeframe. Beyond that, Mary's statements as excited utterances on the 911 call and immediately at the scene were extremely powerful. She said things such as, my husband killed my best friend. My husband's in a lot of trouble. I can't believe he did it. He needs to go to jail. She wasn't going to protect him. She would cooperate and testify. She later changed her stories and backed away from all that, and perhaps understandable on her part, but the evidence was still there. It was powerful evidence. Then if we look at the defendant's account in and of itself, a common sense analysis, state's position, it's fairly unrealistic, otherwise questionable, and even if accepted, his testimony demonstrated he was not in danger when he returned outside to the gun, and he later admitted that things could have gone differently. This is just a tragic situation all the way around. I would lastly note, it's not dispositive of anything, but I would just cite as a further indication that the evidence was not close at all. It was an eight-day jury trial. The jury deliberated less than three hours, I think, before finding the defendant guilty on both counts. If there aren't any questions at this point, I would just ask that your honors affirm the defendant's convictions. Any questions, Justice Vaughn? No questions, thank you. Justice Welch? No questions. All right. Thank you for your time, your honors. You may proceed. Your honors, as the state acknowledges, the state didn't make these arguments fleshed out in their brief. To the extent, I'm happy to respond to them here. This is not a sufficiency challenge. The question here is whether Mr. McCauley was denied a right to a fair trial before an impartial jury. The severance statute is very clear. The prejudice component, the state has yet to answer the question of how the use of the domestic violence prior incidents could not prejudice Mr. McCauley. When these cases could have been severed, they could have presented the exact same evidence as to the domestic battery charge. They're at no disadvantage whatsoever. They can present their case in exactly the same way without the jury also being tasked about the domestic battery charge, which that was a conduit for which the state was able to bring in the prior domestic violence incidents. Our legislature has been very careful and specific about when propensity evidence can be used. That's because of the domestic violence. We haven't contested that those priors could come in with respect to the sole charge of domestic battery. But the problem is when you join these charges that allows the jury who does not sit in the vacuum and who is not properly instructed days after they got the only limiting instruction on the use of that evidence. That's the harm here. This is not a sufficiency challenge. The error here is not harmless. This is exactly why we have severance. If severance is not appropriate in this case, I'm not sure what case it would be appropriate in. As I said, there could have been a separate bench trial easy on this, and that's not what happened. It's clear that this is a misdemeanor charge. Why is the state so insistent on charging with the first degree murder? That charge has a sentencing range of 45 to natural life because it involved a firearm. To that extent, as counsel said below, it's pretty clear what's going on here. What it did is compromise Mr. McCauley's right to a fair trial. I think Johnson is on point completely with that. I asked you to follow that. I also asked you to look back at your case, Keeble versus Patterson, which you issued 30 years ago. In that case, you said that the defendant has to get a fair trial. Here it is. Trial court is entitled to substantial discretion when deciding whether a severed charges. That discretion is to be exercised so as to prevent injustice. That's not what happened here. Not at all. Similarly, when the state talks about the evidence, which they really didn't do in their brief. Yeah, absolutely. McCauley, he said he killed his friend. Keep in mind, these are lay people. He shot someone. It's fair to think he might be in trouble for doing that, but he did present a self-defense claim. He testified that his credibility was an issue on that, which is exactly why the propensity evidence was particularly damaging in this case, especially where the jury is not properly instructed. We can't be confident that this is a reliable verdict that was based on applicable law. This is shown by the instruction that was given and the fact that the jury sent out this note, also by the state's own closing evidence. They received the limiting instruction one time, seven days before the close of evidence, when they're fully instructed, during which the star witness who, when the state talks about some of the participants here changing their story, well, so did he. He initially looked at his prior statements to the police at the scene of the offense, and then two days later, I believe, he basically said that the victim in the case was attacking Mr. McCauley. The state says, Mary changed her story, so did their only witness to the offense. We cited the neighbor in our brief. We think her testimony supports the fact that the victim went back into the house, which McCauley testified had said he had asked him to leave. Just one other point on this. Again, the jury saw this traumatic event. It's not commonplace. I think anyone here today, if they saw someone have a violent seizure, would have some effect. All that we were asking for is that there be some inquiry, or at least at a minimum, curative instruction, a reminder. The judge did nothing here, nothing. He didn't inquire. He just dismissed and said, he spent too much time on this issue. That's what he said. He also did not weigh prejudice at all with regard to the severance motion. That's clear. If you go back and look at the transcript, no mention of how joined or triggered the admission of the prior propensity evidence. With that, I would ask, for the reasons stated today and in my brief and our plenary, that you reverse and remand for separate trials on these two offenses. Thank you, counsel. The court will take the matter in this case under advisement and issue its decision in due course.